*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

BETH SZAROLETA                                    :
                                                  :
            Plaintiff,                            :
                                                  :            Case No. 12-cv-04834 (FLW)
       v.                                         :
                                                  :                    **OPINION**
MICHAEL J. ASTRUE,                                :
COMMISSIONER OF SOCIAL SECURITY :
                                                  :
            Defendant.                            :
_____ :

**WOLFSON, United States District Judge:**

Beth Szaroleta ("Plaintiff") appeals from the final decision of the Commissioner of Social

Security (the "Commissioner"), denying Plaintiff disability benefits under the Social Security

Act ("Act").  Plaintiff contends that the record substantiates her claims and requires a conclusion

that she is entitled to disability insurance benefits.  Specifically, Plaintiff maintains that the

Administrative Law Judge (the "ALJ") erred in determining that Plaintiff was not totally

disabled and could perform certain jobs.  After reviewing the administrative record, this Court

finds that the ALJ's decision is not supported by substantial evidence of the record, and

accordingly, reverses the ALJ's decision to deny Plaintiff disability benefits and remands for

further proceedings not inconsistent with this opinion.

## I.      OVERVIEW

### A.      Procedural History

Plaintiff first filed an application for Disability Insurance Benefits on July 27, 2006,

alleging a disability onset date of August 1, 2002.[1]  Compl., ¶¶ 4, 6.  Both the initial application

and request for reconsideration were denied.  *Id.* ¶ 7.  A timely request for a hearing was filed on

October 15, 2007, and a hearing was held before ALJ Michal L. Lissek on April 28, 2009 in

Newark, New Jersey.  *See* Dkt. No. 6-2.  On May 14, 2009, the ALJ issued an unfavorable

decision denying Plaintiff benefits.  Compl. ¶ 8.  Plaintiff petitioned the Social Security Appeals

Council (the "Appeals Council") for review of the ALJ's decision, which was denied on April 7,

2010.  *Id.*  Plaintiff subsequently filed for review in the United States District Court for the

District of New Jersey and, on October 15, 2010, a Consent Order was entered by the Honorable

Mary Cooper, United States District Judge, remanding the case to the Commissioner for further

administrative proceedings.  *Id.*  The Appeals Council vacated the final decision of the

Commissioner and remanded the case to the ALJ with instructions to (1) reconsider Plaintiff's

maximum residual function capacity during the period at issue, based on existing and any

supplemental evidence in the record; and (2) obtain additional evidence regarding the assessed

limitation on Plaintiff's occupational base through testimony of a vocational expert relying on

hypothetical scenarios.  *See* Dkt. No. 6-11.  The ALJ held a hearing on June 16, 2011, at which

time Plaintiff amended her disability onset date to January 2005.[2]  *See* Dkt. No. 6-12.  On June

29, 2011, the ALJ again issued an unfavorable decision, denying Plaintiff disability benefits, and

Plaintiff again petitioned the Appeals Council for review of the ALJ's decision.  Compl., ¶ 8.  On

June 4, 2012, the Appeals Council denied Plaintiff's petition, making the ALJ's June 29, 2011

decision the final decision of the Commissioner and subject to review on this appeal.  *Id.*

---

[1]     The facts and procedural history are taken from the administrative record ("AR")
submitted with Plaintiff's appeal.

[2]     Plaintiff originally asserted a disability onset date of August 1, 2002.  However, Plaintiff
amended the date to January 2005 at the June 16, 2011 hearing.  AR 463.  Notwithstanding this
amendment, the ALJ apparently considered her alleged onset date of disability to be the original
August 1, 2002 date.  *See* AR 434, 436.

### B.     Background

Plaintiff was born on February 28, 1961.  AR 27, 454.  Before her disability, Plaintiff had a job doing secretarial work for a short period of time, prior to which she had been employed at an investor relations firm for almost 20 years.  AR 27, 456.  Plaintiff contends that she stopped working in February 2002 as a result of back pain, panic attacks, and depression, and has been out of work since that date.  AR 27, 458.  Plaintiff filed for Social Security benefits on August 22, 2006, asserting that she is disabled because of various conditions including depression, panic disorder, back and neck pain, and asthma, and claiming a disability onset date of January 2005.[3] AR 28, 463.  In connection with her application for benefits, Plaintiff visited several medical professionals for evaluation of her physical and mental health.  I detail the relevant findings of these professionals below.

### C.     Review of Medical Evidence

### 1.     Physical Health

On January 5, 2005, Plaintiff visited her then treating physician, Dr. Robert Rosen, complaining of back pain, following a trip and fall on a cruise ship about six weeks prior.  AR 14, 212.  Dr. Rosen noted that Plaintiff was "uncomfortable" when standing or walking and Plaintiff was "slightly uncomfortable" when sitting.  AR 212.  Dr. Rosen noted that Plaintiff's paravertebral muscles "show[ed]mild tenderness and spasm bilaterally" and her left SI joint was "slightly tender." *Id.*  Dr. Rosen believed the discomfort to be "straight forward mechanical pain . . . nothing to suggest a radiculopathy." *Id.*  Further, Dr. Rosen noted that Plaintiff's left SI joint had "mild sacroilitis." *Id.*  Dr. Rosen prescribed Motrin 600 mg and physical therapy. *Id.*  Per Dr. Rosen's recommendation, Plaintiff began physical therapy in January 2005.

---

[3]      *See supra* Footnote 2.

On February 2, 2005, Dr. Rosen saw Plaintiff for a follow-up examination. AR 211. Dr. Rosen noted that Plaintiff continued to experience "primarily central lumbar and sacral area pain" that worsened with "prolonged standing." *Id.* Dr. Rosen noted that the results of his examination were "normal." *Id.* Specifically, Plaintiff's thoracic and lumbar spinous processes were "aligned and nontender to palpitation or percussion," her SI joints were normal, she experienced no "significant paravertebral spasm or tenderness," and the results of her strength and sensory exams were normal. *Id.* At that time, Dr. Rosen ordered an MRI of Plaintiff's lumbar spine. *Id.*

On October 2, 2006, Plaintiff visited Dr. Nasser Ani, who became Plaintiff's treating physician for neck and back pain, complaining of sharp, stabbing pain in both her neck and back. AR 15, 33, 338. Dr. Ani noted that the pain was interfering with Plaintiff's sleep. AR 338. Dr. Ani diagnosed Plaintiff with degeneration of the C4 disc, degeneration of the L4 disc, cervical radiculitis, and radiculopathy. AR 340. Dr. Ani then ordered MRIs of the cervical spine and the lumbar spine, as well as bone density studies. AR 341. During Plaintiff's follow up exam with Dr. Ani on October 13, 2006, Dr. Ani concluded that Plaintiff had a displaced cervical intervert disc, a displaced lumbar intervert disc, and osteoporosis, in addition to the problems identified during Plaintiff's October 2, 2006 visit. AR 342, 344.

On November 20, 2006, Dr. Ani noted that Plaintiff experienced no change in the location, quality, severity, or timing of her pain with respect to both her back and neck. AR 346.[4] According to Dr. Ani's notes, Plaintiff continued to experience back and neck pain, but

---

[4] Plaintiff visited Dr. Ani's office again on January 3, 2007, and submitted to various tests and procedures including nerve conduction, amplitude and latency/velocity studies, and an "EMG; Needle," administered by a Dr. Darren Freeman, DO. AR 350. At that time, Dr. Freeman also diagnosed Plaintiff with mild carpal tunnel syndrome, cervical spondylosis without myelopathy, and lumbosacral spondylosis without myelopathy. AR 351.

noted a "slight improvement" in neck pain on July 2, 2007, AR 352-71, as well as some improvement in back pain on January 9, 2008 in response to injection therapy. AR 420. On April 14, 2008, Plaintiff visited Dr. Ani at which time Dr. Ani recommended that Plaintiff obtain a donut for sitting and "coccyx block." AR 407-10.

On July 30, 2008, Dr. Ani noted that Plaintiff continued to experience back spasms and indicated that she was also experiencing weakness in her legs and severe pain in her tailbone. AR 403. At that time, Dr. Ani ordered radiological exams of the spine and pelvis. AR 405. On August 15, 2008, Dr. Ani noted that an MRI conducted on August 6, 2008 revealed continued spinal problems for Plaintiff.[5] AR 400. Plaintiff followed up with Dr. Ani in September and November of 2008 and indicated that she was improving. AR 412-19. Dr. Ani also noted that Plaintiff's response to physical therapy was "much improved." AR 412, 416; *see also* AR 16-17.

During the same time that Plaintiff was being treated by Dr. Ani, on February 26, 2007, Dr. James Paolino, a state agency physician, performed an initial physical residual functional capacity assessment of Plaintiff. AR 15, 317-24. According to Dr. Paolino's notes, Plaintiff stated that she was experiencing shortness of breath and back pain that limited her ability to stand, lift, run, and jump. AR 318. Upon evaluation, Dr. Paolino found that Plaintiff demonstrated the ability to stand for at least two hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and occasionally lift up to twenty pounds. *Id.* While Dr. Paolino noted that Plaintiff experienced postural limitations due to arthritis of the spine, he determined that Plaintiff did not have any manipulative, visual, or communicative limitations.

---

[5]     Specifically, Dr. Ani observed "small posterior ridges and moderate disc bulging at C4-C5 and C5-C6 and a small central subligamentous disc herniation at C5-C6[.] Findings are mo[r]e moderately impressing on the anterior thecal sac at these level[s]. Slight disc desiccation is also noted. No significant cord compression is otherwise evident." AR 400. Dr. Ani further noted "moderate disc bulging at L4-L5 moderately impressing on the anterior thecal sac," but "no significant spinal stenosis is otherwise present." *Id.*

AR 319-21.  Lastly, Dr. Paolino noted that Plaintiff was limited by a number of environmental factors due to her chronic asthma.  AR 321.  Specifically, Dr. Paolino determined that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and noise. *Id.*  Moreover, Dr. Paolino advised that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation.  *Id.*

On February 7, 2009, Dr. Francky Merlin, the consultative medical expert, examined Plaintiff, and provided a "medical source statement of ability to do work-related activities (physical)." AR 385-97, 439.  Dr. Merlin reported that Plaintiff could occasionally lift and/or carry up to ten pounds.  AR 391.  Dr. Merlin also reported that Plaintiff could sit for no more than two hours at a time without interruption for a total of four hours during an eight-hour workday.  AR 392.  Further, Dr. Merlin noted that Plaintiff could stand or walk for no more than one hour without interruption for a total of two hours during an eight-hour workday.  *Id.* According to Dr. Merlin, Plaintiff could not tolerate any exposure to unprotected heights, moving mechanical parts, humidity and wetness, extreme cold, dust, odors, fumes, or pulmonary irritants.  AR 396.

### 2.    Mental Health

Plaintiff saw Dr. Christopher Williamson,[6] the psychiatric consultative examiner, on December 28, 2006, pursuant to a referral for mental status evaluation by Mr. Michael Welsh, Claims Adjudicator with the Division of Disability Determination Services.  AR 18, 298.  Dr. Williamson observed that Plaintiff appeared depressed and anxious.  AR 298.  Dr. Williamson also noted that Plaintiff had a long-standing psychiatric history of depression and anxiety.  *Id.* Nevertheless, Dr. Williamson observed that Plaintiff "could complete simple mathematical

---

[6]       In the May 14, 2009 decision, the ALJ refers to this doctor as "Dr. Williams."

calculations," that her "overall fund of knowledge appeared to be in the average range," and that her "[a]bstract reasoning appeared intact." AR 299. Dr. Williamson further concluded that Plaintiff was "cognitively competent to handle her own funds." *Id.*

On January 1, 2007, an initial mental residual functional capacity assessment was performed by Dr. Joan Joynson. AR 314-16. Dr. Joynson noted that Plaintiff was not significantly limited in her ability to perform activities within a schedule, sustain an ordinary routine, make simple work-related decisions, or adapt to changes in the workplace. AR 315-16. Similarly, Dr. Joynson noted that Plaintiff was not significantly limited with respect to her ability to understand, remember, and carry out simple instructions, and that Plaintiff was only moderately limited in her ability to understand, remember, and carry out detailed instructions. AR 314. Dr. Joynson also indicated that Plaintiff was only moderately limited in her ability to complete a normal workday without interruptions from psychological symptoms and to perform at a consistent pace without an unreasonable amount of rest periods. AR 315.

### D. Testimonial Record

### 1. Plaintiff's Testimony

Plaintiff appeared and testified at two hearings before the ALJ, in April 28, 2009 and again on June 16, 2011, providing substantially similar, consistent, and overlapping testimony at both hearings. In general, Plaintiff testified that she suffers from depression, panic attacks, and back and neck pain, and as a result stopped working in 2002. AR 28. Plaintiff further testified that she suffers from asthma, diabetes, lactose intolerance, and Hashimoto's disease. AR 29. With respect to acute physical disabilities, Plaintiff testified that she: (1) experiences difficulty in keeping her head straight and feels pain when she turns her head to the left or right; (2) is unable to lift a heavy object without experiencing pain in her neck, and thus would also be unable to lift

as little as eight pounds repeatedly; (3) cannot stand for longer than 15-20 minutes at a time; (4) cannot sit in a chair for more than 15-20 minutes at a time without experiencing pain in her back; and (4) has difficulty completing most household chores such that she has a friend who cleans the house and does all of the laundry. AR 31-33, 39-40.

Plaintiff testified that she visited "Dr. Nassanti"[7] every two months for treatment of her neck pain and back pain, explaining that she received physical therapy and that she received cortisone injections in both her neck and back without any long-term pain relief. AR 33, 468-70. Plaintiff testified that she takes medication "most every day" to help alleviate the pain, including Vicodin and Motrin 600, and sometimes muscle relaxers. AR 34. Plaintiff explained that her ability to drive is limited due to neck pain and medication that makes her drowsy, and as a result she frequently relies on her husband to drive her places. AR 35. Plaintiff also testified that a number of irritants trigger her asthma including rain, dust, mold, pollen, animals, perfume, and the smell of ink. AR 501-02.

With respect to mental health, Plaintiff testified that she has suffered from a panic disorder and depression since she was thirty years old, but that these psychiatric problems had worsened until she was no longer able to work. AR 490. Plaintiff further testified that she began receiving psychiatric care from Dr. Abenante in 2006, and was prescribed Prozac, Xanax, and Ambien, but she nevertheless experiences panic attacks about two or three times per week, characterized by a tightness in her chest, hyperventilating, difficulty breathing, light-headedness, and dizziness. AR 36, 492-94.

### 2. Medical Expert Testimony

---

[7]     Dr. Nassanti appears to be Dr. Nasser Ani, as the transcript contains the notation that Dr. Nassanti was a phonetic spelling, and the dates supplied by Plaintiff during this portion of her testimony correspond to medical records relating to Dr. Ani.

At the April 28, 2009 hearing, Dr. Martin Feshner, an impartial medical expert hired by the Commissioner, reviewed Plaintiff's relevant medical history and determined that Plaintiff was capable of performing sedentary work.[8] AR 41, 45. Dr. Feshner opined that if Plaintiff could sit for two hours at a time, she would be capable of sitting for a total of six hours in an eight hour workday. AR 45. Dr. Feshner testified that due to Plaintiff's asthma, Plaintiff should not be around an excessive amount of dust or extreme temperatures. AR 45. However, Dr. Feshner also testified that Plaintiff's asthma was under control, noting that Plaintiff was taking all of the proper asthma medication for her condition. AR 43.

### 3. Vocational Expert Testimony

Rocco Meola, an impartial vocational expert, testified at the June 16, 2011 hearing. AR 434, 511. Pertinent to this appeal are several hypotheticals posed by the ALJ and answered by Mr. Meola. First, the ALJ asked:

> Assume a hypothetical individual with the vocational profile of the claimant. And assume further that I find that she could do sedentary work with the following non-exertional limitations. She can't be exposed to excessive amounts – to extremes in temperature, excessive humidity, excessive amounts of dust, or known pulmonary irritants… Could such an individual perform the claimant's past relevant work?

AR 513-20. In response, Mr. Meola testified that such an individual would be able to perform Plaintiff's past relevant work as a secretary, provided it could be classified as sedentary. AR 520.

The ALJ then imposed an additional limitation on the hypothetical individual that "[b]ased on anxiety and panic attacks and symptoms of depression, she's limited to work that could be learned in one month or less, that involves only simple instructions, and that has only occasional contact with supervisors, coworkers, or the general public." AR 523. Mr. Meola

---

[8]     No medical expert was called at the June 16, 2011 hearing.

responded in his testimony that such individual would not be capable of performing Plaintiff's past relevant work. *Id.* However, Mr. Meola also testified that there were other sedentary occupations available to that individual such as a document prep worker, a scale operator, an addresser, or a hand mounter. AR 524. Mr. Meola testified in that connection that approximately 1,100 such jobs exist in the region of northern and central New Jersey and more than 35,000 of such jobs exist in the national economy. *Id.* The ALJ then imposed a further limitation that the hypothetical individual "cannot turn their head from side to side." AR 528. In response, Mr. Meola testified that such an individual would not be able to perform the sedentary jobs previously stated because "in all sedentary jobs, a person does have to have some movement of the neck." *Id.* However, Mr. Meola explained that if such an individual could turn their neck "halfway" or only twenty percent in each direction then he or she would not be precluded from these sedentary jobs. AR 529.

Plaintiff's attorney followed by posing a further limitation on the ALJ's hypothetical individual, adding that the individual experienced pain or spasm when turning their neck "side to side to twenty degrees," which would affect concentration resulting in the individual having to stop and resume work five minutes later when the pain subsided. AR 535. Mr. Meola responded that such an individual "would not be able to do the jobs on a consistent basis." *Id.*

E.     **The ALJ's Findings**

In a decision dated June 29, 2011, the ALJ initially determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2007. AR 434, 436. Thus, Plaintiff would be required to establish disability on or before that date to be eligible for a period of disability and disability insurance benefits. After reviewing the record and applying the relevant law, the ALJ determined that Plaintiff was not under a disability within the meaning

of the Social Security Act during the applicable disability period – from August 1, 2002[9] through the date last insured.  AR 434, 436, 441.

In reaching this conclusion, the ALJ applied the standard five-step evaluation process to determine if Plaintiff satisfied her burden of establishing disability.[10]  AR 435-36.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of August 1, 2002[11] through her date last insured of December 31, 2007.  AR 436.  At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, asthma, a thyroid condition, neck pain, lower back pain, and panic disorder. *Id.*  At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under SSA that would automatically find Plaintiff disabled.  *Id.*  At step four, the ALJ determined that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except that Plaintiff "can perform work that can be learned in one month or less and that involves simple instructions, that involves only occasional contact with supervisors, coworkers or the general public, that does not involve exposure to extremes in temperature, high humidity or undue amounts of dust or known pulmonary irritants, that does not involve moving her head side to side more than twenty degrees, and that allows her to take one one-hour unscheduled break a month due to possible panic attacks during work hours."  AR 437-38.  The ALJ made her findings by stating that they were consistent with the objective medical evidence and other evidence in the record, and that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that

---

9       *See supra* Footnote 2.
10      *See infra* Part II.B.
11      *See supra* Footnote 2.

they were inconsistent with the RFC assessment. AR 438-40. Specifically, the ALJ noted that although the Commissioner's medical consultant opined that Plaintiff could not tolerate even moderate exposure to fumes and pulmonary irritants, and Plaintiff testified that she had to remove the carpeting from her home to accommodate her asthma, there was insufficient evidence regarding Plaintiff's condition to find that she had environmental limitations to such a disabling degree to preclude the performance of all work activity. AR 438. In that connection, the ALJ noted that the vocational expert testified that an environment that involves exposure to moderate amounts of fumes, odors, dust, gases or poor ventilation would be substantially similar to the environment of an administrative hearing room, and that Plaintiff sat in the ALJ's hearing room for almost two hours, with only one short break, with no asthmatic symptoms. *Id.* Further, the ALJ noted that Plaintiff testified that she had to leave work to go to the hospital for asthma exacerbations five to ten times during the course of her twenty years of work, yet there was no evidence in the record to support this statement. *Id.* Moreover, the ALJ noted that the medical expert at the April 28, 2009 hearing testified that Plaintiff's asthma was controlled by medication. *Id.* The ALJ also noted that although Plaintiff testified that she suffers two asthma attacks per week, this claim was not supported by the record. AR 439.

Having determined Plaintiff's RFC, the ALJ determined that the demands of Plaintiff's past work exceeded her RFC and she was unable to perform any relevant past work. AR 440. Proceeding to step five, the ALJ determined that since Plaintiff was born on February 28, 1961, she was 46 years old on the date last insured, which placed her in the "younger individual" category. AR 440. Further, the ALJ found that Plaintiff had at least a high school education and was able to communicate in English, and that transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules support a finding that Plaintiff

is "not disabled" regardless of whether Plaintiff had transferable job skills. *Id.* Finally, the ALJ considered Plaintiff's RFC, age, education, and work experience, as well as whether any jobs existed in significant numbers that Plaintiff could have performed given her limitations. AR 440-41. The ALJ determined that Plaintiff had the RFC to perform a full range of sedentary work and that there were a significant number of jobs in the national economy that Plaintiff could have performed, and, as a result, that Plaintiff was not disabled as defined by the Act at any time from August 1, 2002 through December 31, 2007. *Id.*

## II.  DISCUSSION

### A.  Standard of Review

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions

for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

###### B. Standard for Entitlement of Benefits

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* § 1382c(a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination

of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* § 404.1520(c); *see Plummer*, 186 F.3d at 428. Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See Id.* § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482

U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146–47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

## C. Plaintiff's Arguments

On appeal, Plaintiff raises two challenges to the ALJ's step five analysis: (1), the ALJ's RFC failed to account for certain physical or mental limitations that were credibly established by the record, and therefore these limitations were not conveyed to the vocational expert in the hypothetical questions, and (2) even if the RFC was correct, the ALJ failed to adequately convey all of Plaintiff's limitations in the RFC to the vocational expert in the hypothetical questions.[12] *See, e.g.*, Pl. Br. at 22; *accord Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005) (noting these two types of challenges to step five determination).

### 1. RFC Determination

At step four, the ALJ determined Plaintiff had the RFC to perform sedentary work as

---

[12] In that connection, I note that the ALJ clearly found – and the Commissioner does not dispute – that Plaintiff could not perform her previous work in light of the ALJ's RFC determination. Thus, the only issue on this appeal is whether the Commissioner adequately carried his burden at step five to show that Plaintiff was not disabled within the meaning of the Act.

defined in 20 C.F.R. § 404.1567(a),[13] provided that Plaintiff:

> can perform work that can be learned in one month or less and that involves
> simple instructions, that involves only occasional contact with supervisors,
> coworkers or the general public, that does not involve exposure to extremes in
> temperature, high humidity or undue amounts of dust or known pulmonary
> irritants, that does not involve moving her head side to side more than 20
> [degrees], and that allows her to take one one-hour unscheduled break a month
> due to possible panic attacks during work hours.

AR 437-38.  Plaintiff challenges each of these findings, contending that the ALJ's RFC
determination was not based on substantial evidence in the record but, rather was "take[n] out of
thin air" and was "expedient, self-serving, goal-orienting, and utterly meaningless."  Pl. Br. at
10-14.

In making a residual functional capacity determination, the ALJ must consider all
evidence before him.  *See Plummer v. Apfel*, 186 F.3d at 429; *Doak v. Heckler*, 790 F.2d 26, 29
(3d Cir. 1986).  Although the ALJ may weigh the credibility of the evidence, he must give some
indication of the evidence which he rejects and his reason(s) for discounting such evidence.  *See
Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d at 121; *Cotter v. Harris*, 642 F.2d 700, 705
(3d Cir. 1981).  In *Burnett*, the Third Circuit determined that the ALJ had not met his
responsibilities because he "fail[ed] to consider and explain his reasons for discounting all of the
pertinent evidence before him in making his residual functional capacity determination."  220
F.3d at 121.  "In the absence of such an indication, the reviewing court cannot tell if significant
probative evidence was not credited or simply ignored."  *Cotter*, 642 F.2d at 705.  Similar to the
medical reports, the ALJ must also consider and weigh all of the non-medical evidence before

---

[13]     "Sedentary work involves lifting no more than 10 pounds at a time and occasionally
lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is
defined as one which involves sitting, a certain amount of walking and standing is often
necessary in carrying out job duties. Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

him.  *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Cotter*, 642 F.2d at 707.  A claimant's allegations of pain and other subjective symptoms are to be considered, *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529), and, if they are consistent with objective medical evidence but the ALJ rejects such allegations, the ALJ must provide an explanation for doing so.  *See Van Horn*, 717 F.2d at 873.

Here, in determining Plaintiff's physical RFC, the ALJ relied on the testimony of medical expert Dr. Martin Fechner who opined at the original hearing on April 28, 2009 that Plaintiff could do sedentary work.  AR 439; *see also* AR 45.  The ALJ considered Dr. Merlin's opinion that Plaintiff could sit for two hours at a time but for no more than four hours in an eight-hour workday, but ultimately rejected this limitation in light of conflicting medical evidence.  AR 439.  Specifically, the ALJ noted that Dr. Fechner had testified that if Plaintiff was able to sit for two hours at a time, she would be able to sit for a total of six hours if she took reasonable breaks.[14]  *Id.*  Additionally, Dr. Ani's January 10, 2011 RFC assessment noted that Plaintiff could only sit for one hour without interruption, but could sit for four to six hours in an eight-hour workday.  AR 653.  In that connection, I note that the Third Circuit has recognized that it is reasonable to assume that an individual in Plaintiff's position, performing sedentary work, would be able to

---

[14]    I note that it is entirely proper for an ALJ to accept the testimony of a medical expert over conflicting testimony of a claimant's treating physician, provided the expert's opinion is based on the record evidence, and the ALJ explains why he or she gives greater weight to the expert. *Brown v Astrue*, 649 F.3d 193, 196-97 ("Although there was record evidence from a treating psychiatrist suggesting a contrary conclusion, the ALJ is entitled to weigh all evidence in making its finding. . . .  As the ALJ clearly explained why she gave greater weight to the opinion of [the medical expert], her decision was supported by substantial evidence and was not contrary to law." (Citations omitted.)); *id.* at 196 n.2 ("The law is clear, however, that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.").  Here, the ALJ credited the medical expert, Dr. Fechner, over portions of the consultative medical examiner's and Plaintiff's treating physician's opinions, explaining that these opinions were internally inconsistent and/or not supported by Plaintiff's medical record.  *See* AR 439.  Thus, the ALJ's decision to credit the medical expert was not contrary to law.

take some breaks throughout the workday – rejecting the presumption that "all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Milano v. Comm'r of Soc. Sec.*, 152 F. App'x 166, 169-70 (3d Cir. 2005) (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). The ALJ also relied on Dr. Ani's treating record indicating that Plaintiff's limitations caused by lower back and cervical pain had improved significantly with treatment. AR 439. For these reasons, I conclude that the ALJ's finding that Plaintiff could perform sedentary work, including sitting for six hours in an eight-hour workday, is supported by the substantial evidence of the record.

Plaintiff also contends that the ALJ erred in finding that Plaintiff's RFC included a restriction that Plaintiff could move her "head side to side no more than 20 [degrees]." AR 437. Plaintiff argues that she testified that she has "limited range of motion in [her] neck," AR 438-39, but the ALJ ignored this testimony and instead sought to divine a range of motion that would not preclude Plaintiff from obtaining work. Pl. Br. at 18-20. In that connection, Plaintiff points to specific portion of the colloquy between the ALJ and the vocational expert at the June 16, 2011 hearing, wherein the ALJ first asked Mr. Meola if a hypothetical individual who could not turn her head side to side at all would be affected in their ability to perform work. AR 528. Mr. Meola testified in response: "In my opinion [such a limitation would . . . . If a person is unable to turn their neck from side to side . . . they would not be able to do the sedentary jobs . . . that I've indicated . . . ." *Id.* The ALJ then proceeded to go off the record before resuming questioning of Mr. Meola. In subsequent examination, the ALJ asked Mr. Meola several questions to determine what ranges of motion of the neck would preclude an individual from performing sedentary work. AR 528-30 (inquiring about "50 degrees," "halfway," "30 percent

in each direction," and "20 percent in each direction"). Ultimately, Mr. Meola opined that "the person has to move their head at least . . . 20 percent, 25 percent – or 20 percent in either direction . . . . And if they can do that, they can usually do jobs that are done straight in front of them." AR 530. According to Plaintiff, this colloquy, which apparently culminated in the relevant RFC finding, was not based on any evidence in the record. This Court agrees.

As an initial matter, I note that the ALJ and vocational expert generally spoke in terms of percentages at the hearing, but the ALJ's RFC determination sets forth the limitation using "degrees." Because the ALJ's decision provides no further explanation for the twenty-degree limitation – the only basis for this finding is that "the record further indicates . . . a full range of neck motion," AR 439 – it is unclear whether the RFC finding actually matches the vocational expert's testimony. This alone supports the conclusion that the ALJ's finding is not based on substantial evidence.

Additionally, because the ALJ's decision includes no basis for its finding that Plaintiff retains a twenty-degree range of motion in her neck, the decision fails to set forth any indication of how the ALJ considered Plaintiff's testimony that she had "limited" range of motion in her neck, restricting her in her daily activities. *See, e.g.*, AR 489 (in response to attorney's question during the hearing that "every time you look at me, you turn your entire body," Plaintiff responded "yes"). Nor did the ALJ explain what portions of Dr. Ani's treating records were credited or rejected when the ALJ found that Plaintiff had a "full range of neck motion." AR 438. "Allegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft v. Apfel*, 181 F.3d at 362. Although an ALJ need not fully credit a complainant's own testimony about her pain, the ALJ must nevertheless "take care to address such evidence in the course of his findings." *Smith v. Astrue*, 359 F. App'x 313, 317 (3d Cir.

2009). Thus, "[i]n order for an ALJ to reject a claim of disabling pain, he must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record," *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990), with "the basis for such a conclusion . . . indicated in his or her decision." *Cotter v. Harris*, 642 F.2d at 705. Here, there was substantial testimony from Plaintiff that she had disabling pain in her neck since at least 2005 that had not improved. *See* AR 481-89. In addition, Plaintiff's medical records from her treating physician indicated that Plaintiff received ongoing treatment for neck pain, and although there was some indication that the pain had improved, it had not dissipated completely. *See* AR 398-423. None of this evidence was meaningfully addressed in the ALJ's RFC determination, and there is nothing in the record that would form the basis for the ALJ's finding that Plaintiff maintains the ability to turn her head side to side by twenty degrees. For these reasons, I conclude that the ALJ's finding with respect to Plaintiff's neck mobility is not based on substantial evidence in the record.

Plaintiff next contends that the ALJ ignored Dr. Paolino's RFC determination that Plaintiff cannot tolerate even moderate exposure to fumes and pulmonary irritants. The ALJ rejected Dr. Paolino's opinion that Plaintiff could not tolerate any exposure to dust, odors, fumes, and pulmonary irritants. AR 438; *see also* AR 396. Similarly, the ALJ did not credit Plaintiff's own testimony (1) citing animals, perfume, ink, and other environmental irritants such as rain and pollen that trigger her asthma, or (2) that she had visited the hospital emergency room during work 5-10 times over the 20 years preceding the alleged onset of her disability. AR 438; *see also* AR 500-504. In rejecting these records and testimony, the ALJ instead relied on the vocational expert's testimony that an environment involving exposure to moderate amounts of fumes, odors, dust, gases or poor ventilation is similar to the ALJ's hearing room, which is an

office environment, and noted that Plaintiff was able to sit through the two-hour hearing without any asthmatic symptoms. *Id.* Of course, this opinion of the vocational – not medical – expert does not address the effect of such an environment on someone over the course of an eight-hour workday, as opposed to a two-hour hearing. To further support the determination that Plaintiff was not adversely limited by her asthma, the ALJ referenced the testimony of the medical expert at the April 28, 2009 hearing, Dr. Fechner, that Plaintiff's asthma was controlled by medication. *Id.* The ALJ's determination regarding Plaintiff's environmental limitations is flawed for two reasons.

To begin, there is no indication that the ALJ considered the opinion of Plaintiff's treating physician with regard to Plaintiff's asthma. Instead, the ALJ merely considered and rejected Dr. Paolino's assessment based almost entirely on the ALJ's questioning of the vocational expert. In doing so, the ALJ improperly substituted her own opinion for that of Dr. Paolino and Dr. Ani. "An ALJ 'is not free to employ [her] own expertise against that of a physician who presents competent medical evidence.'" *Yensick v. Barnhart*, 245 F. App'x 176, 181 (3d Cir. 2007) (quoting *Plummer*, 186 F.3d at 429); *see also Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988) ("[T]he medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence." (Emphasis added.)). Thus, an administrative law judge may not disregard an otherwise credible medical opinion based solely on the ALJ's own "amorphous impressions." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000); *see also Bunch v. Astrue*, No. 4:10-cv-1920, 2011 WL 6100409, at *5 (M.D.P.A. Dec. 7, 2011) ("'Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor' because 'lay intuitions about medical phenomena are often wrong.'" (Quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990))).

Furthermore, although the ALJ cites to the opinion of Dr. Fechner in the April 28. 2009 hearing, the ALJ fails to point to any specific medical evidence in the record to support the conclusion that Plaintiff's asthma is controlled by medications – particularly in light of Dr. Paolino's conflicting opinion regarding the severity of Plaintiff's asthma. The ALJ's cursory reference to Dr. Fechner was specifically identified by the Appeals Council in its remand of Plaintiff's case as evidence that required concrete support in the medical records. *See* AR 576-77. Thus, regardless of whether that Dr. Fechner correctly concluded that Plaintiff's asthma is controlled, the ALJ's reliance on Dr. Fechner's opinion – and summary rejection of Dr. Paolino's – is not in accordance with the Appeals Council's direction to set forth the reasons why the ALJ chose to give greater weight to the medical expert over the medical consultant. *See* 20 C.F.R. 404.1527; *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008) ("[A]n ALJ may not reject pertinent or probative evidence without explanation.); *Cotter v. Harris*, 642 F.2d at 706 ("[T]here is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record."); *Yensick v. Barnhart*, 245 F. App'x at 183 ("Without knowing why the ALJ failed to credit [the consultative medical examiner's opinion], we cannot conclude that his finding as to [Plaintiff's] RFC was supported by substantial evidence.").

Turning next to Plaintiff's mental RFC findings, I conclude that the ALJ's determination that Plaintiff "can perform work that can be learned in one month or less and that involves simple instructions," and also "that involves only occasional contact with supervisors" is supported by substantial evidence. In making this determination, the ALJ relied on the consultative mental examiner's findings that Plaintiff could repeat up to five digits forwards and four digits backwards, and that she could complete simple mathematical calculations of addition

and subtraction.  AR 439; *see also* AR 298-300.  In support of the mental RFC finding, the ALJ also considered the May 23, 2008 letter from Plaintiff's treating psychiatrist, Dr. Abenante, reporting that Plaintiff is "well oriented in all . . . spheres."  AR 379-80.

In contrast, the ALJ's determination that Plaintiff requires only "one one-hour unscheduled break a month due to possible panic attacks during work hours" is not supported by the substantial evidence of the record.  *See* AR 439.  In making this determination, the ALJ found that Plaintiff's testimony that she suffers two panic attacks per week was not supported by the record.  *Id.*  Review of Plaintiff's treating psychiatrist's May 23, 2008, letter, however, reveals that Dr. Abenante noted that Plaintiff "gets panic attacks once or twice per week."  AR 380.  Thus, the ALJ's specific finding in this regard is contrary to the evidence.  The ALJ further found, however, that even if Plaintiff did suffer from two panic attacks per week, there is nothing in the record to indicate that they would occur more than one-time per month while Plaintiff was actually at work.  AR 439.  Again, such a finding constitutes an impermissible medical determination that is not based in evidence.  Nothing in the record indicates when Plaintiff's panic attacks occurred, and accordingly the ALJ's finding amounts to nothing more than the ALJ's own "amorphous impression" regarding the Plaintiff's panic attacks.  *See Morales v. Apfel*, 225 F.3d at 318.  I therefore conclude that this aspect of Plaintiff's RFC is not supported by the substantial evidence of the record.

In sum, although most aspects of the ALJ's RFC determination are supported by substantial record evidence, several critical findings are not.  Specifically, the ALJ failed to support the findings concerning Plaintiff's (1) physical limitations based on her range of motion

of her neck and her asthma and (2) mental limitations based on her panic attacks.[15]  Accordingly, the Court concludes that the RFC determination with respect to these limitations is not supported by substantial evidence of the record and necessitate a remand for additional findings.

## 2.    Vocational Expert Questioning

Plaintiff also asserts that the ALJ erred during step five by failing to account for Plaintiff's psychiatric impairments in any of the hypothetical questions posed to the vocational expert, Rocco Meola. Pl. Br. at 22-26.  In that connection, Plaintiff contends that the ALJ used hypotheticals that did not adequately convey to the vocational expert the extent of Plaintiff's mental limitations as set forth in the RFC found by the ALJ.  Review of the transcript reveals that the majority of the hypotheticals, including those upon which the ALJ apparently based the decision, track Plaintiff's limitations with respect to her ability to perform unskilled work.[16]  However, because I have already determined that the ALJ's RFC determination was not wholly supported by substantial evidence of the record, other aspects of the ALJ's hypothetical

---

[15]    As noted previously, the ALJ also failed to account for Plaintiff's amended disability onset date, *see supra* Footnote 2, although this error does not affect my analysis of the ALJ's decision.

[16]    Plaintiff's RFC, as found by the ALJ, included restrictions that Plaintiff could only "perform work that could be learned in one month or less and that involves simple instructions," and "that involves only occasional contact with supervisors, coworkers or the general public." AR 437.  During the hearing on June 16, 2011, the ALJ posed the following as "hypothetical number two":

> Based on anxiety and panic attacks and symptoms of depression [Plaintiff] is limited to work that could be learned in one month of less, that involves only simple instructions, and that has only occasional contact with supervisors, coworkers, or the general public. . . . Could such an individual perform [Plaintiff's] past relevant work?

AR 523.  As evidenced by this question, the ALJ's questioning of the vocational expert in hypothetical number two matched identically Plaintiff's RFC as found by the ALJ.  Furthermore, contrary to Plaintiff's argument, each successive hypothetical offered by the ALJ built off of this same psychiatric limitation and changed only certain physical or environmental restrictions.

questioning were also necessarily deficient.

In order for the Court to find that a hypothetical question was based on substantial evidence, the "hypothetical question must reflect all of a claimant's impairments that are supported by the record." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984). "'While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.'" *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Podedworny*, 745 F.2d at 218); *see also Johnson v. Comm'r*, 529 F.3d 198, 206 (3d Cir. 2008) ("[T]he hypotheticals posed must 'accurately portray' the claimant's impairments and [ ] the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" (Quoting *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005))).

Thus, the ALJ's step five determination was not supported by substantial evidence in the record because the ALJ's questioning of the vocational expert was not based on an RFC that accurately portrayed Plaintiff's limitations. *Burns v. Barnhart*, 312 F.3d at 123 ("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.").

## III.     CONCLUSION

For the reasons set forth above, the ALJ's decision is REVERSED and REMANDED for proceedings not inconsistent with this Opinion.

An appropriate Order shall follow.

Dated:  July 17, 2013                          /s/ Freda L. Wolfson
                                               Freda L. Wolfson, U.S.D.J.